■ In the Matter of UNIVERSITY HEIGHTS NURSING HOME, Appellant, v MARK CHASSIN, as Commissioner of Health of the State of New York, et al., Respondents. [665 NYS2d 475] —Carpinello, J. Appeal from a judgment of the Supreme Court (Teresi, J.), entered September 11, 1996 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of the Department of Health partially denying petitioner's request for, *inter alia*, a recalculation of its Medicaid reimbursement rates for 1982 through 1985.

Petitioner is a licensed residential health care facility in Albany County. As a provider of Medicaid services, petitioner receives reimbursement through a combination of Federal and State funds. Reimbursement rates are established by the State Department of Health (hereinafter the Department) (*see*, Public Health Law art 28) pursuant to State regulations (*see*, 10 NYCRR subpart 86-2). Following receipt of its Medicaid reimbursement rates for reimbursement years 1982 through 1985, petitioner filed a rate appeal with the Department seeking increases to cover the costs of additional full-time equivalent employees hired during those years. Petitioner claimed that it was entitled to be reimbursed for these additional staff members because such hirees were specifically mandated by the Department.

The Department partially approved petitioner's appeal in December 1988. In the explanatory documents attached to the determination, the Department made clear that its partial approval was based upon its review and analysis of a variety of information, including annual cost reports, "Determination of Medical Status" data, "Research Utilization Groups-II" data, survey documentation provided by petitioner and Department recommendations dated June 6, 1980 and June 29, 1984. The Department allowed a total of 44.91 additional full-time equivalents at this time, 61.13 less than petitioner was requesting.

Following further administrative review, the Department granted further partial approval of petitioner's request (allow-

ing an additional 6.07 full-time equivalents); it did not, however, permit petitioner to be reimbursed for all full-time equivalent employees actually hired. Petitioner commenced this CPLR article 78 proceeding challenging this determination contending, as it did at the administrative level, that it is entitled to reimbursement for all full-time equivalent employees hired during the rate years 1982 through 1985 (petitioner claims it was "under-reimbursed" by a total of 55.06 full-time equivalents). Supreme Court's dismissal of the petition has prompted this appeal.

Because petitioner did not overcome its heavy burden of demonstrating that the Department's determination is arbitrary and capricious (*see, Matter of County of Monroe v Kaladjian*, 83 NY2d 185, 189; *Matter of Grace Plaza v Axelrod*, 157 AD2d 953, 954), we affirm Supreme Court's judgment dismissing the petition. Inasmuch as Medicaid rates are prospective in nature (i.e., based upon prospective, rather than actual, costs), "the pertinent issue is not whether petitioner has experienced increased labor costs but, rather, whether it was entitled to reimbursement for these costs under the prevailing regulations" (*Matter of Silver Lake Nursing Home v Axelrod*, 156 AD2d 789, 790; *see, Matter of Bassett Hosp. v Axelrod*, 127 AD2d 260, 262 ["entitlement to an increased reimbursement rate is not automatic even in those instances where valid costs have been incurred which exceed those projected when the reimbursement rate was established"]).

To obtain an increase, petitioner was obligated to demonstrate significant increases in the over-all operating costs of its facility "resulting from the implementation of additional programs, *staff* or services specifically mandated for the facility by the commissioner" (10 NYCRR 86-2.14 [a] [3] [emphasis supplied]). Fundamentally, the Department's interpretation of this regulation will be accorded deference by this Court unless it is irrational (*see, Matter of Howard v Wyman*, 28 NY2d 434, 438; *Matter of Silver Lake Nursing Home v Axelrod, supra*, at 790). While there is no dispute that petitioner was cited for staffing deficiencies subject to penalties for continued violations in 1980, there is no evidence of a Department "mandate" to hire a specific number of employees.

Petitioner was initially required to develop and implement a plan to maintain a minimum of 3.03 nursing care hours per patient per day. This was later reformulated to 3.1 care hours per patient per day. It was recommended that petitioner maintain a direct care staff of 129 full-time equivalents; its staffing levels, however, rose to 138.46, 147.14, 150.04 and

147.18 between 1982 and 1985, respectively. Subsequent to the management assessment completed by the Department and its notification to petitioner of the violations, the Department warned petitioner that its nurse staffing levels continued to be inadequate. Notably, the Department's warnings to petitioner were directed at "insufficient staffing to meet the needs of patients" and not the actual amount of personnel on the payroll available for service.*

While the inadequacy of petitioner's staff warranted the hiring of additional employees, as the Department itself recognized by twice partially approving petitioner's request for a rate reimbursement, petitioner has failed to prove that all of the full-time equivalents hired were "specifically mandated" by the Department. In short, the mere fact that petitioner was not reimbursed for all hirees, in the absence of a specific mandate directing same, does not render the determination " 'without sound basis in reason and * * * without regard to the facts' " (*Matter of County of Monroe v Kaladjian*, 83 NY2d 185, 189, *supra*, quoting *Matter of Pell v Board of Educ.*, 34 NY2d 222, 231). The Department's determination need only be supported by a rational basis (*see generally*, *Matter of Eden Park Mgt. v Axelrod*, 152 AD2d 844, 846; *Matter of Bassett Hosp. v Axelrod*, 127 AD2d 260, *supra*).

Finally, petitioner contends that the Department's determination is irrational because it is based upon an outdated management assessment review. Despite petitioner's awareness by, at the latest, December 1988 that the Department utilized, in part, a June 6, 1980 management assessment review in calculating the necessary nursing staff levels for the 1982 through 1985 reimbursement years, petitioner never objected to such use at the administrative level. The failure to raise such claim at the administrative level precludes our consideration of it now (*see, e.g.*, *Matter of Henry v Wetzler*, 82 NY2d 859, 861, *cert denied* 511 US 1126; *Matter of Budget Tire Ctr. v Jackson*, 235 AD2d 975; *Matter of Mera v Tax Appeals Tribunal*, 204 AD2d 818, 821; *Matter of Friesch-Groningsche Hypotheekbank Realty Credit Corp. v Tax Appeals Tribunal*, 185 AD2d 466, 469, *lv denied* 80 NY2d 761; *Matter of Sasson v Commissioner of Educ.*, 127 AD2d 875, 876). We further note that there is no claim in the petition itself that the Department's determination is irrational because it is based on this outdated management assessment review (*see, e.g.*, *Matter of Miller v McMahon*, 240 AD2d 806, 807-808; *Matter of Cocozzo*

---

* As an example, petitioner was notified in November 1984 that certain *shifts* were not being adequately covered with a licensed nurse.

*v Ward*, 162 AD2d 202, 203). Rather, the claim was raised for the first time in a reply affidavit (*see*, *Matter of Crawmer v Mills*, 239 AD2d 844, 844-845, *appeal dismissed* 90 NY2d 934).

Crew III, J. P., Yesawich Jr., Peters and Spain, JJ., concur. Ordered that the judgment is affirmed, without costs.